## WOODWORTH *vs.* BENNETT.

Although the sale of a bid for a contract upon public works is illegal and void, yet if the purchaser gives his note for the purchase money, for the benefit of several persons interested in the bid, and afterwards pays it to one of them, the latter cannot set up the illegality of such sale, to avoid .the payment to one of the payees, of his share of the note.

Such a note cannot be enforced, as between the immediate parties to it. The maker can successfully resist the payment thereof; and the defense of the illegality of the transaction out of which the note arose would be a perfect defense to an action brought to collect it, *it seems.*

Money having been placed in the hands of an individual as a mere depositary, for the use of another, may be recovered by the latter, whether it was paid to the depositary on a legal or an illegal contract. The liability of the depositary arises upon the receipt of the money, and is entirely separate from, and independent of, any illegal contract.

THIS action was brought by the plaintiff to recover the value of a quantity of quarried stone, left by him upon the bank of the Erie canal, and taken from thence by the defendant. The plaintiff, in his complaint, alleged that on the 2d day of May, 1863, the defendant was indebted to the plaintiff in the sum of $500, for a large quantity of stone, the property of the plaintiff, and taken by the defendant from the bank of the Erie canal, and converted to the use of the defendant upon a contract for constructing the enlarged Erie canal, and for which stone the defendant had received pay from the state of New York. The plaintiff waived the tort and claimed from the defendant what said stone were reasonably worth, or what the defendant received for them from the state of New York.

The defendant, by his answer, denied the complaint, and each and every allegation therein contained. For a second and further defense, he alleged that he purchased and bought of the plaintiff a certain lot of stone, being the same stone mentioned in the complaint, at the stipulated price of $100 ; that the defendant had paid $100, the price agreed upon for said stone, to the plaintiff, in full. For a third defense, the defendant alleged that the plaintiff was

indebted to him in the sum of $300, and interest thereon for six years, for money loaned and advanced to the plaintiff by the defendant at the plaintiff's request; also, for money had and received by the plaintiff and his agents of the defendant, at the plaintiff's request; also, for money paid, laid out, expended and advanced by the defendant to the plaintiff, his agents and servants, at the plaintiff's request, which said sum of $300 and interest the defendant claimed a right to prove and offset against the plaintiff's claim, on the trial, and to have judgment for a balance of $200, over and above the plaintiff's said claim, with the costs of this action. The defendant further alleged, that in or about the year 1857, the plaintiff, defendant, and one De Witt C. Stephens and Charles Truesdell held a note for the sum of $400 and interest, against one Harroun, of Fulton, Oswego county; that the plaintiff collected the amount of said note and paid over the amount thereof going to said Stephens and Truesdell to said Stephens and Truesdell; that the balance of the proceeds of said note belonging to the plaintiff and defendant, was adjusted, and the sum of $100 fixed and agreed upon as the sum going to the defendant, which said sum of $100, with interest thereon from the year 1857, the plaintiff agreed to pay the defendant; but had not paid the same or any part thereof to the defendant, and is justly indebted to the defendant therefor, which said sum the defendant would prove and offset against the plaintiff's claim, and claim a judgment for a balance of $150, over and above the plaintiff's claim in this action. The defendant further alleged that he and the plaintiff, in or about the year 1853, were in partnership in certain business transactions in this state; that after said partnership had terminated and been dissolved, and a settlement of all partnership matters between the plaintiff and defendant had been had, the defendant, at the request of the plaintiff, paid in the aggregate in different small sums, the

sum of $100 of the partnership debts of the plaintiff and defendant out of the defendant's individual funds, at the request of the plaintiff; that one half of the amount so paid by the defendant, the plaintiff, both before and after the same had been paid, agreed to repay and refund, with interest from the year 1853, or thereabouts, to the defendant; that the plaintiff had not refunded or repaid the same, or any part thereof, but was still justly indebted to the defendant therefor, which said sum, with the interest thereon, the defendant would prove on the trial and offset against the plaintiff's claim, and claim judgment for a balance of $100, and interest since the year 1855.

The plaintiff put in a reply by which he denied each and every allegation of new matter in the answer contained. And for a further reply to the answer admitted that the plaintiff and defendant were copartners in certain business transactions, as stated in the defendant's answer, and alleged that after the work was completed and the money received from the state, the plaintiff and defendant settled between themselves and paid all copartnership debts, and that there remained on hand, as property of said copartnership, a derrick worth $60, and other tools and fixtures worth $300; that the defendant took said copartnership property and converted the same to his own use. And the plaintiff further alleged that he had a claim against one Wm. S. Parkhurst for $50, which, by a formal assignment, he sold to the defendant, said defendant agreeing that he would pay afterward the plaintiff therefor; that the defendant has not paid the same, or any part thereof, nor for said copartnership property or any part thereof.

And, in reply to the fourth counter-claim set up in the defendant's answer, the plaintiff alledged that said note made by Harroun belonged solely to the plaintiff; that the defendant could claim no portion of said note without relying upon a copartnership agreement, made in contra-

vention of the statutes of this state, illegal, contrary to public policy, and void, and that the transaction through which the defendant claims a part of the Harroun note, was contrary to law, against public policy, illegal and void. Wherefore said plaintiff claimed to set off one half of the value of said derrick, tools and fixtures, and the claim for $50 against Parkhurst, sold to the defendant, against the claim of the defendant alleged in his said answer, and demanded judgment for $500, the sum specified in his complaint, besides costs.

The action having been duly brought to trial before a justice of this court without a jury, (a jury having been expressly waived by both parties in open court,) after hearing the proofs and allegations of the parties, he found the following facts :

*First.* That the defendant purchased of the plaintiff in the year 1859, 34 ⁴⁹⁄₁₂₈ cords of stone near Rome, Oneida county, for which he agreed to pay the sum and price of $100.

*Second.* That in the year 1857 the defendant paid and advanced for the plaintiff, at his request, the sum of $32.09.

*Third.* That in the year 1858 the said plaintiff, defendant, De Witt C. Stephens and one Truesdell, were equally interested in a bid for work on the Seneca river improvement; that the said bid was made out in the name of the plaintiff; that after the bid was made, the plaintiff, defendant, Stephens and Truesdell, sold out said bid to one Harroun for $400, receiving his note therefor—one quarter of said note and the avails thereof belonged to each of said four parties; that after the said note was received from Harroun, by an agreement and arrangement between the said plaintiff and the defendant, Stephens and Truesdell, the same was left with the plaintiff for collection, one quarter of the proceeds of said note to be paid over to Stephens, and one quarter to Truesdell, and one quarter to Bennett, when collected; that about the month of April, 1859, the

plaintiff collected the full amount of said note, and out of the avails thereof paid over to said Stephens $100, the amount of the proceeds of said note belonging to him, and also paid over to said Truesdell $100, the amount of the proceeds of said note belonging to him, but he did not pay over the $100 collected on said note belonging to said Bennett, but promised and agreed to and with said Bennett to pay the same and apply the same on their deal in the settlement thereof.

The plaintiff, upon the settlement of the case, requested the judge to find the following facts, and the judge found according to said request:

*First.* That there was an agreement in the nature of a copartnership made between the plaintiff, defendant, Stephens and Truesdell, in relation to the proposal made by the plaintiff for the Seneca river improvement, a part of the Oswego canal, in the fall of 1858.

*Second.* That such agreement was secret and not generally known.

*Third.* That Charles Truesdell was then an engineer, and acting in that capacity, upon the New York state canals.

*Fourth.* That the proposal for such public work was made in the plaintiff's name alone.

*Fifth.* That the defendant Bennett and D. W. C. Stephens signed said proposal as the plaintiff's sureties.

*Sixth.* That there was an agreement made between them and Harroun that they should withdraw their claim for said public work and sell the bid to Harroun.

*Seventh.* That the defendant, Bennett, personally assisted in the negotiation and sale to Harroun.

From the foregoing facts the judge found and decided, as conclusions of law, that although the relinquishment of the bid by Willard H. Bennett, Samuel Woodworth, De Witt C. Stephens and Charles Truesdell, and their sale to Elliott Harroun for the consideration of $400, was illegal, and contrary to public policy and void, yet, that

when Harroun gave his note to them for the payment of the same for their joint and equal benefit, and the same was afterwards paid to Samuel Woodworth, he could not set up the illegality of the transfer of the bid to Harroun to avoid the payment of one fourth thereof to Bennett, the defendant in this action.

He further found and decided that the defendant was entitled to recover of and from the plaintiff the sum of $32.09, and interest since 1857, and the further sum of $100, collected as aforesaid, and interest since the year 1859, less the sum of $100 for said stone, and interest thereon since the year 1859, making a balance of $57.06, for which sum, with interest from date, judgment was ordered, with the costs of the action in favor of the defendant.

*G. F. Bicknell,* for the appellant. I. The transaction, as found by the court, shows three separate and distinct contracts. 1st. The contract of copartnership, or the contract that the plaintiff, the defendant, Stephens and Truesdell should be jointly interested in the plaintiff's proposal for the Seneca river improvement and its proceeds. 2d. The contract between the partnership and Harroun by which the bid was relinquished and sold to Harroun. 3d. The contract implied by law on the plaintiff's part to pay the defendant all the moneys belonging to the defendant, that were received by the plaintiff, or the weaker contract, as found by the court, that the plaintiff promised to pay one fourth part of the Harroun note to the defendant, and apply the same on their deal.

II. The court found and decided as matter of law, that the first contract—the agreement of copartnership between the plaintiff, the defendant, Stephens and Truesdell—was illegal, and not capable of being enforced between the parties to the same. There is but one question on this appeal, and that is, Will the courts enforce the obligations of an illegal partnership between its members? The

agreement between the plaintiff, the defendant and Trues-dell, to make the proposal for the Seneca river improvement in the plaintiff's name alone, and share the profits thereof, was illegal, made in contravention of the statutes of this state, imposing certain conditions. and restrictions upon such proposals for public work upon the New York state canals, and that those statutes, if not in express words, yet by plain implication and manifest intention, prohibit such a transaction as the defendant sets forth and proves as the basis upon which his counter-claim rests. If the respondent be permitted by this court to recover one fourth part of the Harroun note, then this court must enforce an illegal partnership agreement, because it is only through and by virtue of such an illegal agreement that the respondent asserts his claim. Though the relinquishment by the plaintiff of his proposal to Harroun, conceded to be illegal, was not such an illegality as would preclude a member of a legally constituted partnership to recover from his copartner a share of the avails of such illegal relinquishment received by such copartner, yet when the partnership is an illegal partnership; when the law prohibits the members thereof from forming such a partnership; when all are equally guilty of violating the law and are participants in such violation, then such partnership is illegal, and the maxim prevails when an action is brought to enforce the partnership agreement, *potior est conditio defendentis.*

III. It is also conceded by the defendant's attorney and found by the court, that the relinquishment of the bid and the sale to Harroun for $400 was illegal, contrary to public policy, and void. This being conceded, no argument is required upon this point, and the case of *Sharp* v. *Wright and McDonald,* (35 *Barb.* 236,) settles the question that such relinquishment was illegal, contrary to public policy, and void.

IV. The contract implied by law that the plaintiff is bound to pay the defendant all moneys received by him, that legally belonged to the defendant, or the express contract that the plaintiff would pay the defendant one fourth part or the Harroun note or apply it on their deal, rests wholly upon the legality of the transaction. If there were no legal obligation on the part of the plaintiff to pay the defendant one fourth part of the Harroun note, his express promise is without consideration, is a mere naked promise and without validity. If the whole $400 received by the plaintiff for the sale and withdrawal of his proposal belonged solely to the plaintiff, as all the papers show that it did, then there is no consideration for such promise, and if it appear that the defendant can claim only one fourth part of the Harroun note through an illegal and void agreement of partnership, then the plaintiff's promise to divide, pay or apply afterwards upon their deal is of no force or validity, and the finding by the court, that the plaintiff "promised and agreed to and with the defendant to pay the same and apply the same on their deal on the settlement thereof, amounts to nothing, only so far forth as it rests upon an obligation which the law will enforce. If the promise had been in writing—if the plaintiff had given the defendant his note or his bond—it could not be collected by the defendant if the transaction were illegal. (*Brown* v. *Tarkington*, 3 *Wall.* 377. *Steers* v. *Lashley*, 6 *Term Rep.* 61. *Brown* v. *Turner*, 7 *id.* 630. *Pole* v. *Harrobin*, 9 *East*, 416, *n.* *Paxton* v. *Popham*, *Id.* 408; *Shackell* v. *Rosier*, 2 *Bing. N. C.* 646. *Duvergier* v. *Fellows*, 5 *id.* 348. *Gray* v. *Hook*, 4 *Comst.* 449.) The express promise is equally tainted with the illegality as the implied promise. (*See DeBegnis* v. *Armistead*, 10 *Bing.* 107; *Ribbans* v. *Cucket*, 1 *Bos. & Pul.* 265; *Aubert* v. *Maze*, 2 *id.* 371; *Fisher* v. *Bridges*, 3 *El. & Black.* 642; 3 *Bos. & Pul.* 252, *n.*; *Smith* v. *Ware*, 13 *John.* 259.)

Woodworth *v.* Bennett.

V. The contract of copartnership between the plaintiff, the defendant, Stephens and Truesdell was illegal, contrary to public policy, made in contravention of the statutes of this state, and not capable of being enforced between the parties to the same. (*Armstrong* v. *Armstrong*, 3 *Mylne & Keen*, 45: *Fraser* v. *Hill*, 1 *McQueen*, 392. *Griswold* v. *Waddington*, 16 *John.* 438. *Williams* v. *Jones*, 5 *Barn. & Cress.* 108. *Edmonson* v. *Davis*, 4 *Esp.* 14. *O'Connor* v. *Bradshaw*, 5 *Ex.* 882. *Ottley* v. *Browne*, 1 *Ball & Beatty*, 360. 3 *N. Y. Stat. at Large*, 163, 184. *The People* v. *Utica Insurance Company*, 15 *John.* 380, 381. *Tounele* v. *Hall*, 4 *N. Y. Rep.* 144, 145. 2 *R. S. Edm. ed.* 696, § 39. 1 *Kent's Com. 9th ed.* 525. *Griffith* v. *Wells*, 3 *Denio*, 226. *Stradling* v. *Morgan*, *Plowd.* 2069. *Life Ins. Co.* v *Mechanics' Ins. Co.*, 7 *Wend.* 31. *People* v. *Draper*, 15 *N. Y. Rep.* 558. *Wilkinson* v. *Adams*, 1 *Vesey & B.* 466. *Barton* v. *Port Jackson*, *&c.* 17 *Barb.* 404. *Camden* v. *Anderson*, 6 *Term. Rep.* 723. *Harris* v. *Runnels*, 12 *How. U. S.* 79. *Armstrong* v. *Lewis*, 4 *Moore & Scott*, 1. *S. C.* 2 *Camp. & Mees.* 284. 3 *Myl. & Keen*, 45. *Gordon* v. *Houden*, 12 *Clark & Fin.* 237. *Ewing* v. *Osbaldiston*, 2 *Myl. & Craig.* 53. *DeBegnis* v. *Armistead*, 10 *Bing.* 107. *Booth* v. *Hodgson*, 6 *Term Rep.* 405. *Exparte Bulmer*, 13 *Vesey*, 313. *Mitchell* v. *Cockburne*, 2 *H. Black.* 379. *Sullivan* v. *Greaves*, 6 *Term Rep.* 406, *n.* *Knowles* v. *Haughton*, 11 *Vesey*, 168. *Everett* v. *Blackburn*, 2 *Stark.* 66.) These cases, being decisions where different prohibitory statutes have come in question, establish the principle that partnerships are illegal when the members thereof, in the formation of such partnership, agree to violate and do violate the spirit and policy of public statutes. And most of the prohibitory statutes referred to, require an affidavit to be made by the parties interested, in tenor and effect similar to that required by the statutes of this state to be affixed to proposals for public work.

VI. The agreement in the nature of a copartnership be-tween the plaintiff, the defendant, Stephens and Truesdell, was also illegal, because Truesdell was an engineer. The statutes, (3 *N. Y. Stat. at Large*, 184, § 11, *and* 3 *id.* 163,) among other officers prohibit engineers being interested in any contract on the canals, either in their own names or in the name of any other person, either as a contractor, surety, or otherwise, and prohibits them, either directly or indirectly, deriving any benefit from the ordinary or extra-ordinary expenditures on the canals beyond their established compensation. The court has found that Truesdell was an engineer, and acting in that capacity upon the canals, and that he, with the plaintiff, the defendant and Stephens formed the copartnership. The statutes above cited prohibit this, and this makes the partnership illegal. The partnership between the plaintiff, the defendant, Ste-phens and Truesdell, was illegal, because Truesdell was an engineer. Truesdell did not want to sign the papers, be-cause he was an engineer. All the parties knew that Trues-dell's connection with them was in violation of the law, and his name must not appear in the papers. This alone shows a conspiracy to violate the law, and puts an end to the defendants' counter-claim. (*See Hall* v. *Franklin*, 3 *Mees. & Welsb.* 259; *Ottley* v. *Browne*, 1 *Ball & Beaty*, 360; *Wil-liams* v. *Jones*, 5 *Barn & Cress.* 108; *Hopkinson* v. *Smith*, 1 *Bing.* 13; *Gilfillan* v. *Henderson*, 2 *Clark & Fin.* 1; *Tench* v. *Roberts*, 6 *Mad.* 145; *Gillow* v. *Lillie*, 1 *Bing. N. C.* 695.)

VII. There is a distinction between enforcing illegal contracts and enforcing a claim to moneys which have arisen from such contracts. If there were no other illegal contract in this case than the contract between Woodworth and Harroun in relation to the sale and relinquishment of the proposal for the Seneca river improvement, then there would be great force in the position that such illegal con-tract is complete and ended; that there was nothing ille-gal in Harroun paying the $400 note to Woodworth,

though he could not be compelled legally to pay it, and nothing illegal in Woodworth receiving the money. Therefore if one fourth part of the Harroun note legally belonged to Bennett, Woodworth must pay it over; he cannot take advantage of the illegality between himself and Harroun, which is complete and ended, to retain the money he has received; and a judgment that Bennett is entitled to recover from Woodworth one fourth part of the Harroun note, does not enforce the illegal contract between Woodworth and Harroun. But in this case, to permit Bennett to recover from the plaintiff one fourth part of the Harroun note, he must establish, as his foundation, a partnership between the plaintiff, defendant, Stephens and Truesdell, and if, while establishing such partnership, he shows that such partnership is illegal, then he cannot recover, because the courts will not enforce an illegal partnership agreement, and that which is sought to be enforced in this case is a promise implied by law, or expressly made by one member of an illegal partnership to divide the plunder resulting from the illegal combination. The finding and decision of law and the exceptions thereto were not inserted by the appellant, and do not accord with his theory of this case. There is no principle of law better settled than this, that the courts will not enforce illegal contracts; but if money has been paid to an agent for the use of his principal, the legality of the transaction of which the money is the fruit, does not affect the right of the principal to recover it out of the agent's hands. The illegal contract being ended, the agent, whose liability arises solely from the fact of having received the money for another's use, can have no pretense to retain it. If A lend B a sum of money, B cannot withhold payment by showing that A acquired the money illegally, and when a third party pays money to B, as the money of A, and with instructions to B to deliver it to A, it is immaterial to B whether the money arose from an

obligatory or a void and illegal contract. (*See Tenant* v. *Elliott*, 1 *Bos. & Pul.* 3; *Farmer* v. *Russell, Id.* 296; *Merritt* v. *Millard*, 5 *Bosw.* 649; *Murray* v. *Vanderbilt*, 39 *Barb.* 141; *Alvord* v. *Latham*, 31 *id.* 295; *Armstrong* v. *Toler*, 11 *Wheat.* 258; *McBlair* v. *Gibbs*, 17 *How. U. S.* 232; *Thomson* v. *Thomson*, 7 *Vesey* 470; *Simpson* v. *Bloss*, 7 *Taunt.* 246.) Without multiplying cases, it clearly apears that the courts will not enforce illegal contracts, but will permit a recovery of the fruits of an illegal contract where the parties to the action are not participants in the illegal contract, and where the liability does not arise from the illegal contract itself, but is collateral to and independent of it. The principle which governs the decisions in *Tenant* v. *Elliot* and *Farmer* v. *Russell*, is most clearly defined in the latter case, where the court sent back the case for a new trial to ascertain whether the defendant was a participant in the illegal contract, and has no application to the case in hand. Strange as it may seem in morals, yet in the law governing this peculiar subject—law not based upon the rights of the parties, but adopted for the protection of the courts—none but a *participator in the offense* is permitted to suggest the impurity of the transaction for the consideration of the court and thus incidentally avail himself of the rule. To go further than this would be impracticable, and would outlaw all property dishonestly obtained, effectually preventing its ever forming the valid consideration for a promise, either expressed or implied, and involve the court in an endless task of ascertaining and determining the rectitude of the means by which all property had been attained. While in going so far the court protects its purity and dignity by refusing to sit as umpire among thieves and to distribute their plunder according to the terms of their confederacy. In *Tenant* v. *Elliott*, the broker, who was no party to the offense by which the money was obtained, was compelled to pay over the money he had received to

another's use, while in this case the court is asked by one partner in an illegal combination and confederacy to apportion the gains of an illegal partnership among its members, or to let the law raise an undefiled promise from a corrupt agreement. It may even be conceded that the law as adjudged in *Faikney* v. *Reynous*, (4 *Burr*. 2069,) and in *Petrie* v. *Hannay*, (3 *T. R.* 418,) to be sound and unquestionable, which adjudges that a bond given for a share of moneys illegally obtained, after the offense was committed and the illegality ended, may be enforced in a court of law. And it may even be conceded that a promissory note, which imports a consideration and *prima facie* sustains a recovery without resort to the illegality out of which it arose, may be enforced, though the preponderance of authority is unquestionably against both propositions, (*Lightfoot* v. *Tenant*, 1 *Bos. & Pul*, 551 ; *Gaslight Co.* v. *Turner*, 5 *Bing*. 666 ; *Cannan* v. *Brice*, 3 *Barn. & Ald*. 179 ; *McKinnell* v. *Robinson*, 3 *Mees. & Wels*. 434;) for this case steers entirely clear of these questions, in this, that here both the express promise and that which would, but for the illegality, be implied by law, depend upon and arise directly out of the illegality itself, and which is their only source of consideration and support. If the agreement between the plaintiff and Harroun took place as the plaintiff states it, and if the agreement in the nature of a partnership were legal and capable of being enforced, then the defendant ought to recover one fourth part of the Harroun note, and the appellant is willing to concede as a question of law, that where there is a legal partnership and that partnership engages in an illegal adventure from which gain or profits arise for the partnership, and one of the partners receives these gains or profits, he must account to his partners ; he cannot retain what he has received on the ground that it was the fruit of an illegality between the partnership and another. But if the transaction between the plaintiff and Harroun took place as

the defendant states it, then the defendant was a *particeps criminis* in the illegal transaction between the plaintiff and Harroun, and under the cases cited cannot recover. Above all, the defendant cannot recover one fourth part of the Harroun note, when the agreement of partnership and the partnership itself, upon which he relies as the foundation of his claim, was illegal, in violation of law, and in fact void and no partnership.

VIII. The defendant, when he signed the plaintiff's proposal as one of his sureties, and took it to the engineer's office and presented it to the contracting board, became estopped from coming into a court of justice and claiming that he was a principal. He held out to the canal officers and the world that the plaintiff alone was the principal; that with him the contract for the work should be made. By signing as surety, he agreed with the plaintiff and with the canal officers that Woodworth alone was interested in the proposal, and the plaintiff says, "Before the bid was made out Bennett and Stephens concluded to sign my proposal as sureties for me and let me bid alone for the work, which I did." (*Sinclair* v. *Jackson,* 8 *Cowen,* 586. *Demeyer* v. *Legg,* 18 *Barb.* 20. *Torrey* v. *Bank of Orleans,* 9 *Paige,* 659.)

*John Snow,* for the respondent. The judgment should be affirmed for the following reasons:

I. Although Harroun may have had a good defense to the $400 note, by reason of the illegality of the original bid and the sale thereof, he did not avail himself of that defense, but paid over the money. This gives the plaintiff no right to retain the $100 belonging to Bennett. The case stands precisely the same as if Bennett had been solely interested in the bid and sale thereof, and the $400 had been paid to Woodworth as Bennett's agent. It could hardly be claimed that Woodworth could retain the $400 of Bennett's money, because it had been paid on an ille-

gal contract. The sale of the bid was executed and money paid over. (*Tenant* v. *Elliott,* 1 *Bos. & Pul.* 3, *and Farmer* v. *Russell, Id.* 296, *referred to and approved in* 9 *Wend.* 175.) None of the authorities cited by the plaintiff reach this case, but they repeatedly cite, with approval, the above cases in 1 *Bos. & Pul.* which in principle are the same as the case at bar.

II. Before and after the money was paid it was expressly understood and agreed between the plaintiff and the defendant that the $100 should be turned on the other deal between them. After such application of the money, it was out of the power of Woodworth to overturn such application and charge Bennett with the indebtedness upon which the $100 had already been applied. The original contract of sale was executed and placed beyond the reach of the court, even had it been an illegal contract. The defendant was in no manner compelled to resort to the original bid or the sale to Harroun, to uphold the claim to this $100 of his own money, which had come into Woodworth's hands.

III. The whole question has been passed upon at general term, and it is the well settled practice of this court that the general term will not overrule its own decision upon a question, but leave the party to his remedy by appeal to the Court of Appeals.

*By the Court,* BACON, J. This is the second time this case has been before this court, upon substantially the same state of facts. The only point presented is, whether the $100 which had been paid by one Harroun to the plaintiff, for the use and benefit of the defendant, should be allowed as a set-off to the claim proved by the plaintiff in this suit. On the first trial, before a referee, he disallowed this claim, and reported in favor of the plaintiff. Upon an appeal to this court, the judgment was reversed, and a new trial ordered; and the point seemed to us then so

clear, and the error so manifest, that the reversal was made substantially upon the argument, and no written opinion was prepared. The new trial took place at the circuit, before Justice Morgan, and he has rendered a judgment for the defendant following the opinion of the general term, from which judgment the plaintiff has now taken an appeal, and submits the case to our farther consideration. It is not the custom of this court to hear a re-argument in a case where its judgment has been deliberately given and announced, and we should not be justified in departing from that rule in this case, but for the fact that we rendered the judgment without accompanying it with the reasons upon which it was founded, and out of deference, in part, to the elaborate argument of the counsel for the plaintiff, and the great earnestness and evident sincerity with which his views are urged.

The facts so found by the judge, present the following case. The plaintiff and defendant, together with Stephens and Truesdell, (the latter of whom was an engineer on the canals,) had sold out a bid for some public work on the canal to one Harroun, who gave, upon such purchase, his note for $400 to the plaintiff, one quarter of which was to be paid to each of the said four parties. The note was duly paid to the plaintiff and he paid over to Stephens and Truesdell, respectively, their shares, retaining his own, but refused to pay the $100 to the defendant, agreeing, however, to apply the same upon their mutual dealings when they should come to a settlement. It is this $100 which forms the subject of the set-off claimed in this case, and the judge, as a conclusion of law from these facts, finds that although the sale of the bid was illegal and void, yet that when Harroun gave his note on that consideration and for the benefit of all the parties, and afterwards paid it to the plaintiff, he could not set up the illegality of the sale of the bid to Harroun, to avoid the payment of the one

fourth thereof to the defendant, and the set-off was consequently allowed.

The counsel for the plaintiff expends a large amount of labor and learning to prove that the contract of partnership between the plaintiff, the defendant, Stephens and Truesdell was illegal, contrary to public policy, and made in contravention of the statutes of the state, and therefore incapable of being enforced between the parties to the same. The counsel might have saved himself this unnecessary expenditure of strength, because the decision of the case proceeds upon a concession of the entire illegality of that transaction. Nothing is clearer than that, being so, it could not have been enforced between the immediate parties; that is to say, Harroun could have successfully resisted the payment of the note, and the defense of the illegality of the transaction out of which the note arose, would have been a perfect defense to an action brought to collect it. But this he failed, or did not choose to do. If there was to be "honor among thieves," he proposed to maintain his to the extent of paying what he had agreed to pay, leaving the plaintiff to distribute the spoil rateably among those entitled to it. Having done this, the partnership was *functus officio*—it had accomplished its whole work, and nothing remained to be done to carry out its objects, or further its designs. Thenceforth the plaintiff became a mere depositary of the money for the benefit of those entitled to share in it, among whom was the defendant. It was, in effect, money had and received to the use of the defendant, and which the plaintiff, in addition to his original obligation as substantially a stakeholder, had promised to pay to the defendant. He cannot be permitted to escape from this obligation upon the plea that he received this money as the fruit and result of an illegal transaction; and being himself in that transaction *particeps criminis* with the defendant, the latter has no better stand-

ing than he, and is not entitled to reclaim the money thus paid to the plaintiff for his use.

It seems indeed somewhat of a solecism in morals that no one but a participator in the offense shall be permitted to avail himself of the illegality of a transaction, for his protection from responsibility in respect to it, but such is the undoubted rule when the transaction itself is directly in issue and is sought to be enforced. The courts have adopted this rule in part for their own protection, and to avoid being obliged to play the role of an umpire among felons, and aid one knave at another's expense, and for the benefit of him who equally comes into court with soiled garments and unwashed hands. But to go farther than this, and to hold that after the illegal contract has been fully performed, and no aid is sought to uphold and enforce it, a party who has received money paid in execution of the contract for the benefit of another, shall be allowed to fall back on the illegality of the original transaction to screen him from the discharge of what is a mere agency, would be refining, beyond any reasonable degree, and carrying the immunity of a participant in such prior illegal transaction to a needlessly, fastidious and even romantic extent.

It is conceded by the counsel for the plaintiff that if money has been paid to an agent for the use of a principal, the legality of the transaction, of which the money is the fruit, does not affect the right of the principal to recover the money from the party who has thus received it. That was decided as long ago as the case of *Tenant* v. *Elliott,* (1 *Bos. & Pul.* 3,) in which it was held that where A had received money to the use of B, on an illegal contract between B and C, he should not be allowed to set up the illegality of the contract as a defense in an action brought by B, for money had and received. The decision is very brief, but it is expressed in the nervous language and with the strong good sense which was characteristic of Mr.

Justice Buller. "Is the man," he says, "who has paid over money to another's use, to dispute the legality of the original consideration? Having once waived the illegality, the money shall never again come back to his hands. Can the defendant then in conscience keep the money so paid? For what purpose should he retain it? To whom is he to pay it over; who is entitled to it but the plaintiff?" In this opinion Eyre, Ch. J. concurred, and the case states the defendant took nothing by his motion.

It is said that this case is shaken, if not overruled, by the case of *Farmer* v. *Russell* decided by the same court in the same volume of *Bos. & Pul.* 296. So far from this, the court recognize fully the doctrine of *Tenant* v. *Elliott,* but a doubt being suggested by two of the judges how far the defendant was implicated in the transaction out of which the suit arose, it was sent back for a new trial, and nothing more is heard of it, save in a note at the foot of the case it is said, the defendant paid the money into court, satisfied, doubtless, that he could not succeed in his defense even if he could have proved that he was, as suggested by Chief Justice Eyre, "mixed up with the original contract." Buller takes occasion to say that the case could not be distinguished from *Tenant* v. *Elliott,* and in relato the point of knowledge and participation by the defendant, he says it is not made out by the evidence, "nor indeed," he adds, "if it had been, would it have made any difference in the case of an action for money had and received, which is not founded on the illegal contract, but on a ground totally distinct from it. It is immaterial whether the money were paid on a legal or illegal contract. Here the money having been paid to another for the plaintiff's use, the illegal contract is out of the question." This is both good sense and good morals, and applied to this case, it indicates the simple duty which the plaintiff had to perform, to wit, to pay over the money placed in his hands as a mere depositary for the use of the defendant,

and to which neither in morals nor in law, could the plaintiff assert the shadow of a claim. Whatever refinements have been attempted in some more recent cases to do away the authority of these early decisions, they have not attained a standing to which we are compelled to yield. On the contrary, in the very recent case of *Merritt* v. *Millard,* in the Court of Appeals, (not yet reported,) the doctrine of Buller is re-affirmed and applied to a case in its general features very similar to the one before us. The case was this. The plaintiff Merritt and one Brewster, had liens upon some real estate which was about to be sold on the foreclosure of a prior mortgage. Millard, the defendant, was acting as the attorney for Brewster, when the latter agreed through him to pay $500, if Merritt would not bid at the sale. Acting on this agreement Merritt omitted to bid, and Brewster was enabled to secure the property without competition. Subsequent to the sale, and to carry out his agreement, he paid $500 to the defendant for the benefit of Merritt, who, upon application by Merritt, refused to pay it over, and in the action brought to recover it, set up the illegality of the contract of Brewster as a defense, claiming as he did upon the trial, and on the argument in the Court of Appeals, that he was connected with the contract between the plaintiff and Brewster, that he knew the object of Brewster in paying over the money to him to be in furtherance of the illegal contract between them, and that he was acting on behalf of Brewster to complete the original contract. Conceding the illegality of the contract made by Brewster with Merritt to prevent competition on the sale, the defense was overruled, and judgment was given against the defendant Millard, and on appeal to the Court of Appeals it was unanimously affirmed. An extract from the opinion of Judge Mason, which was adopted by the court, will indicate the ground of the decision, and show that the principles announced in that case are applicable to, and govern

Woodworth *v.* Bennett.

the one at bar. "Whenever," he says, "the parties have executed a contract for illegal purposes, the court refuses its aid to enable either party to disturb it. Brewster could not be compelled to pay this money, but when he did pay it to the defendant for the plaintiff's use, it did not lie with the defendant to put the money in his own pocket, and refuse to pay it over. Brewster had the right to waive the defense of the illegality of the contract, and pay the money, and when he had done so and placed it in the defendant's hands upon the simple trust that he would pay it over to the plaintiff, the law enjoins that duty upon the defendant, and will not permit him to set up this defense. If the money had been paid directly by Brewster to the plaintiff, it is clear that upon the most elementary principles of law, he could retain it, as against Brewster. The money in that case would, in the strictest sense belong to him. Does it not equally belong to him when paid to another for him?" He then cites in support of these views the cases of *Tenant* v. *Elliott,* and *Farmer* v. *Russell,* thus indorsing and re-affirming the authority of those cases, and *Hamilton* v. *Canfield,* (2 *Hall* 526,) and *Armstrong* v. *Toler,* (11 *Wheat.* 258,) and adds: "The defendant's liability arose upon the receipt of the money, and it is entirely separate from and independent of the illegal contract." It is unnecessary to add any thing beyond this by way of argument, illustration or authority; for the principle stated and enforced covers the whole ground of the attempted immunity in this case, and drives the plaintiff from the covert he seeks under the shadow of the prior consummated and extinguished illegal contract.

The judgment should be affirmed.

[ONONDAGA GENERAL TERM, April 6, 1869. *Bacon, Foster, Mullin* and *Morgan,* Justices.]